1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9   MARK STEPHAN,                                No. C 08-01935 MHP

10            Plaintiff,

11   v.                                          **MEMORANDUM & ORDER**

                                                 **Re: Cross-Motions on Standard of Review**
12   THOMAS WEISEL PARTNERS, LLC (Long           **and Related Discovery Matter**
     Term Disability Plan) and UNUM LIFE
13   INSURANCE COMPANY OF AMERICA,

14            Defendants.

15   _____/

16          Plaintiff Mark Stephan ("plaintiff") filed this action against defendants Thomas Weisel

17   Partners ("Weisel") and Unum Life Insurance Company of America ("Unum" or "defendant")

18   seeking review of the amount of plaintiff's long term disability award under his group insurance

19   policy, pursuant to 29 U.S.C. section 1132(a)(1)(B).  Weisel has been dismissed from this action.

20   See Docket No. 22, Stipulation and Order.  Now before the court are the parties' cross-motions for

21   partial summary judgement on the applicable standard of review of the amount determination, and

22   how that standard of review impacts any further discovery.  Having considered the parties'

23   arguments fully, and for the reasons set forth below, the court rules as follows.

24

25   BACKGROUND

26   I.       Plaintiff's Allegations

27          Plaintiff was hired by Weisel in April 2007.  Plaintiff was insured under Weisel's group

28   long-term disability insurance plan, which is both underwritten and administered by Unum.  On

     August 11, 2007, plaintiff sustained a spinal cord trauma in a bicycling accident, and as a result, can

United States District Court

For the Northern District of California

no longer perform the substantial and material duties of his or any gainful occupation.  Complaint, Docket No. 1, Notice of Removal, Exh. A ("Compl.") ¶ 6.  The parties do not dispute that plaintiff is disabled and entitled to benefits.  The dispute centers on the amount of monthly benefits to which plaintiff is entitled and the determination of plaintiff's pre-disability earnings.

Plaintiff's insurance policy is an employee welfare benefit plan and is governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1001 et seq..  Id. ¶ 3. The policy specifies that, in the event of disability, plaintiff is entitled to 60% of his monthly earnings, up to a maximum rate of $20,000 a month.  Id. ¶ 7, see also, Docket No. 29, Debofsky Dec., Exh. A, ("Policy") at UACL 00072; 00084.  At the time of his injury, plaintiff alleges that, pursuant to his employment contract, he was entitled a base compensation of $200,000 per year with a guaranteed bonus of $300,000 per year.  Compl. ¶ 8.  At the time of his injury, plaintiff received a monthly salary of $36,566, reflecting both his base salary and compensation expenses attributable to his bonus.  Id. ¶¶ 9-10.  Under this standard, plaintiff asserts he is entitled to the monthly maximum of $20,000.  Id. ¶ 11.  Unum calculated plaintiff's benefits using only his base salary of $200,000, and awarded him $10,000 per month.  Id. ¶ 11.[1]

II.    Unum's Policy C.FP-1 and the California Settlement Agreement

The discussion over the proper standard of review hinges on the applicability of what is called a "discretionary clause," which the policy in question specifically contains.  Policy at UACL 00079.  A discretionary clause allows the insurance provider sole discretion to determine the eligibility of the insured and to interpret the terms and provisions of the policy.[2]

Whether or not this clause is operative in this policy requires an extensive analysis of the history of the policy.  This policy, Unum Policy type C.FP-1, was initially purchased by Weisel in 1999, and declares an effective date of June 11, 1999.[3]  Policy at UACL 00070.  In 2004, the California Commissioner of Insurance issued a Notice of Its Intention to Withdraw Approval of this Unum policy type C.FP-1, among other Unum policies as well as policies from Hartford Life Insurance Co., Metropolitan Life Insurance Co., and Provident Life & Accident Insurance Co., because of the presence of a discretionary clause.  See Debofsky Dec., Exh. D, at 20.  After Unum and Hartford requested an administrative hearing, an administrative hearing officer affirmed the

United States District Court

For the Northern District of California

2

Commissioner's Notice and Withdrawal of the specific policies on March, 18 2005. Id.. at 19. The administrative hearing officer found that withdrawal of the policies for the reasons presented was within the scope of the Commissioner's responsibilities. Id. On March 22, 2005, the Commissioner adopted the administrative hearing officer's decision. Id. at 1-2. Both Unum and Hartford filed a Writ of Mandate with the San Francisco Superior Court challenging the Commissioner's actions. Debofsky Dec., Exh. F, at 1.

On October 1, 2005, Unum and the California Department of Insurance reached a settlement agreement. This agreement is known as the California Settlement Agreement ("CSA"). See Docket No. 31-2, Exh. B to Def.'s Mot (copy of CSA). Subsequent to this settlement, Unum withdrew its Writ of Mandate. Debofsky Dec., Exh. E. The CSA specifically addressed discretionary authority in the following ways:

> Respondents [Unum] shall discontinue use of a provision that has the effect of conferring unlimited discretion on the Respondent or other plan administrator to interpret policy language, or requires "abuse of discretion" standard of review if a lawsuit ensues unless the reviewing court determines otherwise ("discretionary authority provision") in any California Contract sold after the date set forth in Section V.

CSA, 11:10-14.

> Any language having the effect of a "discretionary authority provision" . . . shall not be applied to any California Contract sold after the CSA Effective Date [of November 1, 2005]. A "discretionary authority provision" *shall not be included in any new policies issued* as California Contracts or included in Summary Plan Descriptions (SPDs) in ERISA-related plans generated or issued by the Company, after the CSA Effective Date so long as its omission from the policy form or SPD is consistent with what is permitted by applicable California Statutory and case law. Discretionary authority provisions in existing California Contracts that were issued prior to the date of the Order of the Commissioner are not affected by the CSA.

CSA at 13:14-24 (emphasis added).

Pursuant to the CSA, Unum made some amendments to other aspects of its Weisel policy, specifically the definition of total disability and increasing its maximum benefit amount. See, e.g., Policy at UACL 00069, 00072, 00084. Unum prefaced these changes with a sheet of paper declaring "Amendment No. 6" and "[t]he entire policy is replaced by the policy attached to this amendment." Id. at UACL 00068. The cover page further states that "[t]he effective date of these changes is January 1, 2007[]"and "[t]he policy's terms and provisions will apply other than as stated in this amendment." Id. Plaintiff contends this language transforms the policy into the functional

equivalent of a "new" policy, whereas defendant argues this is merely an amendment to an existing policy.

III.     Continued Litigation on Discretionary Clauses by Other Insurance Companies

Hartford continued to pursue its Writ of Mandate with the California Superior Court.  On March 13, 2006, the Commissioner designated the March 18, 2005, decision regarding approval withdrawals as precedential.  See Docket No. 41-2, Martin Dec., Exh. A.  In part pursuant to this designation, the superior court denied Hartford's Writ of Mandate because the discretionary claim gave an insurance company discretion "to interpret every other provision in the policy," and therefore rendered all the other terms of the policy ambiguous and uncertain, in violation of California Insurance Code section 10291.5(b)(1).  Id. at 13; see also Debofsky Dec., Exh. F, at 13.

Hartford appealed, but subsequently reached a settlement agreement with the California Department of Insurance.  Martin Dec., Exh. B.  The Hartford-California Settlement Agreement provided, in part, that the Commissioner would vacate its March 13, 2006, order in exchange for Hartford removing all discretionary clauses from its policies.  See Martin Dec., Exh. C.  Accordingly, on February 5, 2008, the Commissioner vacated: (1) the February 27, 2004, Notice of Withdrawal of Approval; (2) the March 22, 2005, Order adopting the March 18, 2005 Proposed Decision; and (3) the March 13, 2006, Order designating the March 22, 2005, Order as precedential.  Id.  Plaintiff contends that the final March 13, 2006, order remains precedential for Unum—who was initially subject to the decision—and represents the state of the law in California.  Defendant argues that by withdrawing the precedential designation, the order is no longer valid for any party.  Furthermore, defendant argues that even were it precedential, it would only apply prospectively to any new contract.  With respect to the policy in question here, the CSA preempts any order.

IV.     Discovery Matter

Plaintiff now seeks discovery of an internal memorandum created by Unum's in-house attorney at the request of the claim analyst that was added to plaintiff's claim file after plaintiff's initial administrative appeal and Unum's final determination.  Unum is withholding this document based on attorney-client privilege.  Plaintiff also seeks to take depositions of three Unum employees: Michael Parker, Unum's in-house attorney and the author of the withheld document, Stephanie

4

1  LeSieur, the person who made the final benefit determination, and Dominick Palleschi, the person

2  who was involved with the handling and disposition of the claim.  Plaintiff alleges that such

3  discovery is necessary to probe the nature of the benefit calculation, as well as determine whether

4  existing conflicts of interest affect the standard of review of the ultimate issue in this case.

5

6  LEGAL STANDARD

7      ERISA provides for judicial review of a decision to deny benefits to an ERISA plan

8  beneficiary.  See 29 U.S.C. § 1132(a)(1)(B).  ERISA creates federal court jurisdiction to hear such a

9  claim.  See 29 U.S.C. § 1132(e).  In determining the appropriate standard of review, a court should

10  be guided by principles of trust law, analogizing a plan administrator to the trustee of a common law

11  trust.  A benefit determination should be considered to be a fiduciary act, i.e., an act in which the

12  administrator owes a special duty of loyalty to the plan beneficiaries.  Metro. Life Ins. Co. v. Glenn,

13  554 U.S. ___, 128 S.Ct. 2343, 2347 (2008), citing Firestone v. Bruch Tire & Rubber Co., 489 U.S.

14  101, 111-113 (1989).

15      ERISA benefits determinations are to be reviewed *de novo*, unless the benefit plan gives the

16  administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe

17  the terms of the plan.  Glenn, 128 S.Ct. at 2348; see also Firestone, 489 U.S. at 115.  Where an

18  administrator has retained discretionary authority, "trust principles make a deferential standard of

19  review [i.e., review for abuse of discretion] appropriate."  Glenn, 128 S.Ct. at 2348, quoting

20  Firestone, 489 U.S. at 111.  The court must evaluate all the facts and circumstances to make

21  something "akin to a credibility determination about the insurance company's or plan

22  administrator's reason for denying coverage under a particular plan and a particular set of medical

23  and other records."  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 969 (9th Cir. 2006) (*en

24  banc*).  An administrator has discretion only where it is "unambiguously retained."  Kearney v.

25  Stanford Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999), quoting Bogue v. Ampex Corp., 976 F.2d

26  1319, 1325 (9th Cir. 1992).

27      Where a benefit plan gives discretion to an administrator who is operating under a conflict of

28  interest, "that conflict must be weighed as a factor in determining whether there is an abuse of

discretion." <u>Glenn</u>, 128 S.Ct. at 2348, <u>quoting</u> <u>Firestone</u>, 489 U.S. at 115.  When judges review the lawfulness of benefit denials, they will take into account several considerations, of which a conflict of interest is one.  <u>Glenn</u>, 128 S.Ct. at 2351.

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and promote accuracy . . . .

<u>Id.</u> (citation omitted).

The role that a conflict of interest will play will vary depending upon the circumstances of each case: there "are no talismanic words that can avoid the process of judgment."  <u>Id.</u> at 2352.  A particular course of action can both justify giving more weight to a conflict and serve as an important factor in its own right.  <u>Id.</u>

A conflict of interest can exist for ERISA purposes when a professional insurance company both evaluates claims as the plan administrator and is the funding source of applicable benefits under the plan.  <u>See</u> <u>Glenn</u>, 128 S.Ct. at 2349-2350.  Such a conflict is considered to be a "structural" conflict of interest.  <u>Abatie</u>, 458 F.3d at 965.  A court may view the decision of a conflicted administrator with a low level of skepticism "if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history."  <u>Id.</u> at 968.  On the other hand, a court may weigh a conflict more heavily "if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claimant's reliable evidence, or had repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record."  <u>Id.</u> at 968-969.

"Although an ERISA plan is a contract, ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans."  <u>Gilliam v. Nevada Power Co.</u>, 488 F.3d 1189, 1194 (9th Cir. 2007) (internal citations and quotations omitted).  Courts therefore normally "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws."  <u>Id.</u>  These principles comprise a "nationally uniform federal common law" applied in the ERISA context.  <u>See</u> <u>Saltarelli v. Bob Bake Group</u>

Med. Trust, 35 F.3d 382, 386 (1994).  Under the uniform federal common law, courts should interpret plan terms "in an ordinary and popular sense as would a person of average intelligence and experience."  Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 840 (9th Cir. 1995), quoting Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990).

The court "may, in its discretion, consider evidence outside the administrative record to determine the nature, extent, and effect on the decision-making process of the conflict of interest; the decision on the merits [under the abuse of discretion standard], though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic information or otherwise."  Abatie, 458 F.3d at 970.

DISCUSSION

Determining the appropriate standard of review over an ERISA-governed benefit determination requires examination of whether or not the policy unambiguously retains discretionary authority over benefit decisions.  Glenn, 128 S.Ct. at 2348; Kearney, 175 F.3d at 1090.  The policy on its face includes a discretionary clause.  See Policy at UACL 00079.  The question becomes whether this discretionary clause is still operative.

Plaintiff argues that the policy effectively lacks this discretionary language for two alternative reasons: (1) the policy in effect as of January 1, 2007, was the functional equivalent of a "new" policy issued subsequent to the October 2005 CSA, and therefore, pursuant to the CSA, could not have any discretionary clause language; or alternatively (2) it was a renewal policy which would embody existing California state law, which as of January 1, 2007, would need to embody the ban on discretionary clauses approved by the March 13, 2006, order rendering the administrative hearing officer's decision precedential.  Defendant opposes these interpretations, arguing that (1) the changes present in the January 1, 2007, policy were amendments and not a new policy and that the policy is therefore governed by the CSA's language allowing discretionary clauses in all policies in effect prior to November 1, 2005; or alternatively (2) as a renewal contract, the order vacating the March 13, 2006 order means there was no "state law" for the renewal contract to embody; and (3)

even were it not vacated, the manner in which policies are approved in California means it would only apply prospectively. The court addresses each argument in turn.

## I.     New Versus Existing Contract

Plaintiff does not dispute that the policy as written contains a discretionary clause. Plaintiff argues, however, that the use of the 2007 policy date and specific wording set forth in Amendment 6 can only mean that the policy as of January 1, 2007, was new. Since any new policy, per the CSA, cannot have discretionary language in it, the discretionary clause is inoperative and should be severed from the policy. According to plaintiff, because there is no discretionary clause, defendant has not unambiguously retained discretionary authority, and therefore, the proper standard of review is *de novo*.

Plaintiff cites two cases to support its contention: Root v. Lincoln Nat.'l Life Ins. Co.,1991 WL 256527 (9th Cir. Dec. 2, 1991) and Doe v. Ill. State Med. Inter-Ins. Exch., 599 N.E.2d 983 (Ill. App. Ct. 1992). Neither is helpful. Root is, first of all, not citeable precedent to this court. See 9th Cir. R. 36-3 (standard for unpublished orders issued before January 1, 2007). Second of all, even were it precedential, that case stands for the general proposition that when a clause's language is ambiguous, the language will be interpreted against the drafter. Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 540 (9th Cir. 1990); see also Eley v. Boeing Co., 945 F.2d 276, 279-280 (9th Cir. 1991). In Root, plaintiff's compensation was reduced to account for social security he received as a result of his multiple sclerosis ("MS"). Root, 1991 WL 256527, at *1. The plaintiff's policy, received in May 1984, stated that it completely superceded the 1980 policy. Id. In language changed from the 1980 policy, the May 1984 policy stated that no deductions in benefits would be made for other sources of income for pre-existing conditions which "began prior to the individual's most recent effective date of insurance under this policy." Id. Plaintiff, who had MS as of March 1984, challenged his benefit reduction, arguing that he had MS prior to the 1984 policy. Id. Because the language, "individual's most recent effective date of insurance" was ambiguous, and could mean either the 1980 or 1984 effective date, the court interpreted the language against the drafter insurance company. Id. at *2.

United States District Court

For the Northern District of California

By contrast, the instant debate is not about whether a particular clause should be interpreted against the defendant, but rather whether the entire policy was "new" for purposes of determining whether it is subject to the CSA.  In spite of the few passages cited by plaintiffs, the overarching impression of the language shows that the parties considered this document to be amendments to an existing policy.  The language used in the January 1, 2007, document shows it still has the same effective date of June 11, 1999, and instead embodies a few amendments.  Weisel had the option of challenging the amendments if it so wanted.  Furthermore, the first page of the policy specifies that the policy contains amendments, and the effective date of only "these changes" are January 1, 2007.

Doe is similarly inapplicable.  There, the court held that under Illinois state law, a renewal was a new contract and not a continuation of an existing policy for purposes of whether payment for continuing negligence in a medical malpractice action would be capped by the first policy.  Id. at 989.  The court ordered that the insurer must pay the additional coverage under the second policy in part because the continued negligence covered by the second policy's time period was a separate incident.  Id.

By contrast, here, defendants do not dispute that the policy was a renewal, instead asserting that it was not a newly issued policy.  Doe does not speak to whether a policy should be considered new or a renewal for the purposes of determining how to classify it according to a separate settlement agreement.  Pursuant to the CSA, only newly issued policies must not contain the discretionary clause.  Renewal policies were seemingly specifically excluded from the negotiation.  While other settlement clauses specifically referenced that all in-force policies must contain the negotiated language after the date of the first renewal, see CSA at 13:27-28, the settlement for the discretionary clause language does not contain such an instruction.

In further support, defendant points out that under California Insurance Code, an insurance company is allowed to vary certain variables without having to gain further approval from the Commissioner.  These include maximum benefits and language concerning increasing coverage subject to pre-existing conditions.  See Docket No. 35, Williams Dec., Exh. A, at 51-61.  These are precisely the items that plaintiff argues affords a new policy.  Accordingly, the policy is not the

United States District Court

For the Northern District of California

1    functional equivalent of a new policy for purposes of the CSA, thus, the discretionary clause remains

2    in effect.

3    II.    Renewal Policy

4         Plaintiff alternatively contends that even if the January 1, 2007, policy is a renewal, it must

5    encompass California law which finds the use of a discretionary clause misleading and ambiguous,

6    in violation of California Insurance Code section 10291.5.  Plaintiff argues that the Commissioner's

7    order designating the March 18, 2005 hearing result as precedential gives it the weight of state law.

8    As defendants point out, however, in February 2008, that designation was vacated pursuant to a

9    settlement agreement with Hartford Life Insurance.

10        An insurance policy may not be issued or distributed in California without either the explicit

11   or tacit approval of the Commissioner of Insurance.  Cal. Ins. Code § 10290.  The Commissioner

12   may, at any time, issue a notice to withdraw permission for any provision which he "would be

13   authorized to disapprove or refuse filing of the same if originally submitted at the time of the action

14   of withdrawal."  Cal. Ins. Code § 10291.5(f); see also Cal. Ins. Code § 12957.  The Commissioner

15   may also establish "reasonable rules and regulations, and amendments and additions thereto, as are

16   necessary or convenient, to establish, in advance of the submission of policies," the grounds on

17   which a Commissioner will evaluate a policy.  Cal. Ins. Code § 10291.5(e).  In order for a hearing

18   decision to be accorded precedent, the Commissioner of Insurance must specifically designate that

19   hearing decision as precedential.  Cal. Gov't Code § 11425.6.

20        Here, the Commissioner vacated his decision declaring the March 18, 2005, hearing as

21   precedential, as well as the original 2004 Notice of Withdrawal and the March 22, 2005, order

22   accepting the hearing decision.  Although plaintiff argues that this action was only with respect to

23   Hartford—and, therefore, the decisions are still applicable to defendant—the means by which the

24   California Insurance Code governs policy approval show this to be a moot point.

25        Under California insurance law, "precedential decisions" which have had a hearing and

26   notice are set forth as guides by which a Commissioner will examine subsequently submitted

27   policies.  See Cal. Ins. Code § 10291.5(e).  Although the initial March 18, 2005, hearing concerned

28   the policy type in question here, defendant subsequently settled with California.  As long as

United States District Court

For the Northern District of California

defendant followed the parameters of the CSA, its policies were "approved."  Policies approved by the Commissioner are therefore not subject to changes in the factors the Commissioner considers when approving a policy.  As this court previously found in <u>Horn v. Provident Life & Accident Ins. Co.</u>,

> when the terms of an insurance policy have been approved by the California Insurance Commissioner, section 10291.5 of the Insurance Code does not provide the insured seeking reformation of an objectionable policy term with a private right of action against the insurer.  Rather, the insured's only potential remedy is a writ of mandamus compelling the Commissioner to withdraw her approval.

351 F. Supp. 2d 954, 960 (N.D. Cal. 2004 ) (Patel, J.) (internal citations omitted).

Therefore, because the CSA only specified that newly issued policies must not contain discretionary clauses, under the CSA, this existing policy is deemed approved, even with the discretionary clause.

Furthermore, there is no indication that the March 18, 2005, decision, the March 22, 2005, order adopting that decision, and the March 13, 2006, order designating that decision precedential were only vacated with respect to Hartford.  It is, however, a moot point in light of the fact that the policy in question is deemed approved by the Commissioner.

III.   Standard of Review

Under <u>Glenn</u>, when a plan administrator has unambiguously retained discretion, the appropriate standard of review to be applied is "abuse of discretion."  <u>Glenn</u>, 128 S.Ct. at 2348, quoting <u>Firestone</u>, 489 U.S. at 111 (Where an administrator has retained discretionary authority, "trust principles make a deferential standard of review [i.e., review for abuse of discretion] appropriate.").  Because the policy in question is a pre-existing policy with respect to the October 2005 CSA, the discretionary clause contained within is still enforceable.  Accordingly, the proper standard of review here is abuse of discretion.

IV.   Discovery Matter

Plaintiff seeks discovery of an internal memorandum created by Unum's in-house attorney at the request of the claim analyst.  Plaintiff also seeks to take three depositions of Unum employees.  Plaintiff alleges that such discovery is necessary to probe the nature of the benefit calculation.

United States District Court

For the Northern District of California

1  Unum objects to the depositions and is withholding the internal memorandum based on attorney-

2  client privilege.

3  In a March 2, 2009 hearing in this case, the court ordered Unum to submit the document to

4  the court for *in camera* review.  The court stated that the depositions may not be needed if the

5  document is turned over, and prior to turning over the document to plaintiff, the court granted

6  Unum's request to brief the issue of whether the fiduciary exception to the attorney-client privilege

7  applies to the memorandum at issue.

8  Now, the court must consider whether discovery of the memorandum is permitted here,

9  under the abuse of discretion standard, to supplement the administrative record.  Unum argues that

10  discovery is greatly circumscribed in cases involving judicial review of administrative fact-finding

11  and the only way discovery of the memorandum could be relevant to this action is if it relates to

12  determining a conflict of interest as a factor to be considered under <u>Glenn</u>.  Plaintiff contends this is

13  precisely what the memorandum relates to, by virtue of it involving plaintiff's benefit calculation

14  and the consideration of Unum's allegedly inherent conflict of interest, in being both the plan

15  administration and the funding source of applicable benefits under the plan.

16  The Ninth Circuit has made clear that when abuse of discretion is the appropriate standard of

17  review, "[t]he district court may, in its discretion, consider evidence outside the administrative

18  record to decide the nature, extent, and effect on the decision-making process of any conflict of

19  interest . . . ." <u>Abatie</u>, 458 F.3d at 970.  Moreover, discovery decisions in this Circuit post-<u>Glenn</u>

20  have, by and large, allowed limited and narrowly tailored discovery into both demonstrating and

21  probing conflicts of interest.  The Ninth Circuit has recently held that:

22  [<u>Abatie</u> and <u>Glenn</u>] require the district court to consider the conflict of interest as a
   factor whose weight depends on the "nature, extent, and effect" of the conflict on the
23  decision-making process, *which may be unmasked through discovery* . . . As <u>Abatie</u>
   and <u>Glenn</u> materially altered the standard of review applicable to the review of a plan
24  administrator's denial of benefits under ERISA, permitting consideration of evidence
   outside of the administrative record to determine the appropriate weight to accord the
25  conflict of interest factor, we vacate the judgment and remand to the district court for
   further proceedings, *including reconsideration of Wilcox's discovery requests.*

26  <u>Wilcox v. Wells Fargo & Long Term Disability Plan</u>, 287 Fed. Appx. 602, 603-04 (9th Cir. 2008)
27  (emphasis added)

28

12

So too did the Ninth Circuit note, in Burke v. Pitney Bowes Inc. Long Term Disability Plan, 544 F.3d 1016, 1028 n.15 (9th Cir. 2008), "whether to permit discovery into the nature, extent, and effect of the Plan's structural conflict of interest is also a matter within the district court's discretion."  In another instance, where the defendant stipulated that a structural conflict of interest existed, the court found that plaintiff was entitled to discovery regarding "the scope of the conflict [and] . . . the nature, extent and effect of the conflict [but that] . . . such discovery must be narrowly tailored and cannot be a fishing expedition."  Horton v. Liberty Life Assurance Co., 2008 WL 4890899, *7 (N.D. Cal. 2008) (White, J.).  The court then ordered the specific discovery requests to be decided by a magistrate judge.  Id.

In the decision on remand from Wilcox, discovery was granted with respect to such aspects as administrator financial incentive, general claim approval and termination rates, any steps taken to reduce bias, and any factors considered in denying the plaintiff's claim not already included in the administrative record.  See  Wilcox v. Metro. Life. Ins. Co., 2009 WL 57053, *3 (D. Ariz. 2009). The court denied any request directed towards more generalized discovery, including "advice of counsel with respect to this claim."  Id.  Pending this discovery, the parties were ordered to brief how much weight to accord the structural conflict of interest.  Id.

In a recent case born out of a reassessment of the plaintiff's claims after the Unum settlement agreement, defendants sought further review into conflicts of interest after the presiding judge had granted focused discovery into the circumstances under which the plaintiff's appeal was denied and regarding the defendant's response to the plaintiff's request for reassessment.  Bronner v. Unum Life Ins. Co., 2009 WL 248175, *2 (N.D. Cal. 2009) (Seeborg, M.J.).  Discovery requests that were not tailored to probing the conflict of interest, such as medical records, were denied.  Id. at *5.

Under an abuse of discretion standard, the court in Santos v. Quebecor World Long Term Disability Plan, 2009 WL 111910 (E.D. Cal. 2009) granted conflict of interest discovery into issues of administrator credibility, steps taken to reduce bias, and some statistics on claim benefits for certain afflictions.  Id. at *3-6.  Requests by plaintiff directed at the underlying conflict, such as how a policy provision was applied, were denied.  Id. at *4.

In this case, plaintiff's requested discovery of the internal memorandum seems to directly probe his particular claim, as a legal memorandum that provides counsel to the claim analyst could be helpful in determining the gravity of the structural conflict of interest. Based on a review of the document submitted under seal, the court finds the internal memorandum discoverable, absent any attorney-client privilege. Plaintiff argues the fiduciary exception to the attorney-client privilege applies here, because in this disability insurance plan, a plan administrator may not withhold documents from a plan beneficiary on matters of plan administration. See Smith v. Jefferson Pilot Fin. Ins. Co., 245 F.R.D. 45, 47-48 (D. Mass. 2007). As promised, the court will permit Unum to brief this issue of the fiduciary exception before the court makes a determination on whether the internal memorandum should be turned over to plaintiff.

CONCLUSION

The court rules on the cross-motions on the standard of review as described above, finding that the applicable standard of review in this case is abuse of discretion absent a subsequent showing of a conflict of interest. Unum is hereby ordered to brief the issue of the fiduciary exception to the attorney-client privilege as it applies to the memorandum at issue and submitted under seal to the court on March 9, 2009. Unum is ordered to file a memorandum not to exceed ten (10) pages within fourteen (14) days of the date of the filing of this order. Plaintiff may respond with a ten (10) page opposition within fourteen (14) days thereafter at which time the matter will be deemed submitted. No reply memorandum shall be filed.

IT IS SO ORDERED.

Dated: August 14, 2009

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

14

**ENDNOTES**

1.  Unum excluded the bonus from its calculation because it contends it was a one-time-only bonus guaranteed after twelve months of service.  Because plaintiff had not received any bonus between his hire date and the time he became totally disabled, according to Unum, it was not factored into the monthly earnings calculation, which came out to $16,666.66 per month.

2.  The precise language of the Unum discretionary clause is: "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."  Policy at UACL 00079.

3.  Pursuant to California Insurance Code section 10290, this policy type was approved in 1991.  <u>See</u> Docket No. 35, Dec. of Bonnie Williams, Exh. B, at 63.