UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK STEPHAN<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS WEISEL PARTNERS, LLC and<br>UNUM LIFE INSURANCE COMPANY OF<br>AMERICA<br><br>    Defendants,<br>_____/ | No. C 08-1935 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Cross-Motions for Summary Judgment; Defendant's Motion to Strike** |

    Mark Stephan filed this action against defendants Thomas Weisel Partners (TWP) and Unum Life Insurance Company of America (Unum). TWP was later dismissed. Stephan claims the amount of his long term disability award under his insurance policy, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), was erroneously calculated. Now before the court are parties' cross-motions for summary judgment. Having considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

    Stephan was hired by TWP in April 2007. At this time, he was insured under TWP's long-term disability insurance plan, which is both underwritten and administered by Unum. On August 11, 2007, Stephan suffered spinal cord trauma in a bicycling accident, which rendered him disabled and entitled to long-term disability benefits. The dispute here centers on the amount of monthly benefits to which Stephan is entitled.

    Stephan's insurance policy is an employee welfare benefit plan and is governed by ERISA. 29 U.S.C. § 1001 *et seq.* The insurance policy specifies that, in the event of disability, Stephan is

entitled to 60% of his monthly earnings, up to a maximum of $20,000 a month. Docket No. 51 (Debofsky Dec.), Exh. B (Policy) at UACL00072, 00084. At the time of his injury, Stephan was entitled to a base compensation of $200,000 per year with a guaranteed bonus of $300,000 for his first year of employment. Specifically, his employment contract states:

> Your salary rate will be $200,000 annually. . . . Although bonuses are generally discretionary, you will be guaranteed $300,000 bonus for your first 12 months of employment, provided you perform at the level both you and we anticipate and that you have not voluntarily terminated your employment or been terminated for cause prior to the relevant payment dates.

*Id.*, Exh. A (Offer Letter) at UACL00366. On December 28, 2007, even though Stephan had not yet been employed for 12 months, he received his bonus. *Id.*, Exh. E (Appeal) at UACL01004. This payment was made approximately four months after Stephan's date of injury and last day of work.

Unum calculated Stephan's benefits using his base salary of $16,667 per month, and awarded him $10,000 per month in benefits. Unum excluded the bonus from its calculation because it contends the bonus was a one-time-only guarantee, which was subject to twelve months of acceptable service. Unum also asserts that the insurance policy dictates that benefits be calculated using monthly pay earned prior to disability. According to Unum, because Stephan had not received bonus payments between his date of hire and the day he became disabled, the bonus need not be factored into the monthly earnings calculation.

Stephan argues that his disability benefits should be calculated using a monthly earnings figure of $36,566 ($500,000 divided by twelve), which reflects both his base salary and guaranteed bonus. Thus, he claims entitlement to the monthly disability benefits maximum of $20,000.

LEGAL STANDARD

ERISA provides for judicial review of a decision to deny benefits to an ERISA plan beneficiary. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1132(e). ERISA benefits determinations are to be reviewed de novo, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Metro. Life Ins. Co. v.*

2

*Glenn*, 554 U.S. 105, ___, 128 S. Ct. 2343, 2348 (2008); *see Firestone v. Bruch Tire & Rubber Co.*, 489 U.S. 101, 115 (1989).

"A plan administrator abuses its discretion if it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination." *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs.*, 588 F.3d 641, 649 (9th Cir. 2009). In contrast, if the plan administrator makes a good faith decision based upon a reasonable interpretation of the plan's terms, the decision must be upheld. *Sznewajs v. U.S. Bancorp Amended & Restated Suppl. Benefits Plan*, 572 F.3d 727, 735 (9th Cir. 2009). Consequently, under an abuse of discretion standard, the court must not determine whose interpretation of the plan documents is most persuasive, but whether the claim fiduciary's interpretation is unreasonable. *Id.*

DISCUSSION

The applicable standard of review in this action is abuse of discretion. *See* Docket No. 46 (August 2009 Order). Even "if a conflict of interest exists, 'abuse of discretion review applies' and 'that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'" *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 631 (9th Cir. 2009) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (en banc)). This is because "a reviewing court should consider [a] conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Glenn*, 128 S. Ct. at 2346 (citing *Firestone*, 489 U.S. at 115); *Montour*, 588 F.3d at 631 ("[The Ninth Circuit] has implemented this approach by including the existence of a conflict as a factor to be weighed, adjusting the weight given that factor based on the degree to which the conflict appears improperly to have influenced a plan administrator's decision."). According to the Supreme Court's most recent pronouncement, "[a]pplying a deferential standard of review does not mean that the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan 'will not be

3

disturbed if reasonable.'" *Conkright v. Frommert*, ___ U.S. ___, ___, 130 S. Ct. 1640, 1651 (2010) (quoting *Firestone*, 489 U.S. at 111).

Stephan contends that Unum abused its discretion by interpreting his policy to include only monies earned prior to the date of his disability. Secondly, he argues that even if his policy is limited to monies earned prior to his disability, his bonus should be included in the monthly benefits calculations because the bonus accrued, and was therefore earned, monthly, independent of when it was distributed to him. Finally, Stephan argues that Unum's conflict of interest further demonstrates an abuse of discretion. Each argument is discussed in turn.

I.  Policy terms

Stephan's insurance policy calculates benefits by multiplying a claimant's monthly earnings by 60%. Policy at UACL00072, 00084. The policy defines monthly earnings as "your average gross monthly income as figured":

a.  from the income box in your W-2 form which reflects wages, tips, and other compensation received from your Employer for the two (2) calendar years just prior to your date of disability; or

b.  for the period of your employment with the Employer if you have been employed less than two (2) full calendar years prior to your date of disability.

*Id.* Since Stephan was not employed for two full years with TWP prior to his disability, Unum must base its benefits calculations on monthly earnings "for the period of [Stephan's] employment." *Id.* The policy does not define what this period is and, consequently, is ambiguous as to the temporal context within which payments must be considered when determining a claimant's monthly earnings. Specifically, it is not immediately clear whether Stephan's bonus—paid after the date of disability—should be calculated as earnings within the "period of employment."

As a threshold matter, Stephan argues that to the extent that the policy language is ambiguous regarding the inclusion of later-paid bonuses, this ambiguity must be resolved in his favor. The doctrine of *contra proferentem*, holds that "if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured

4

will be adopted." *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 625 (9th Cir. 2007) (internal quotations omitted). The *Blankenship* court, however, specifically held that this doctrine does not apply where the plan: 1) grants the administrator discretion to construe its terms; 2) is the result of a collective-bargaining agreement; or 3) is self-funded. *Id.* The first exception applies here, *see* August 2009 Order; therefore, the doctrine is inapplicable.

Stephan's reference to pre-*Blankenship* cases is unpersuasive. The results in *Hawkins-Dean v. Metro. Life Ins. Co.*, 514 F. Supp. 2d 1197 (C.D. Cal. 2007), and *Martorello v. Sun Life Assur. Co.*, No. C 09-0912 PJH, 2010 WL 1443275 (N.D. Cal. Apr. 9, 2010) (Hamilton, J.), do not compel a different result either. In *Hawkins-Dean*, the court employed a less deferential standard as it found its deference weakened by a strong conflict of interest. 514 F. Supp. 2d at 1200. *Martorello* provides no indication as to the standard of review applied; consequently, it is not persuasive in light of the Ninth Circuit's unambiguous holding in *Blankenship*.

The court now addresses whether the plan's interpretation of "period of employment" was unreasonable. The policy summary page specifies that "the amount [of monthly disability benefits] that you receive is based upon the amount you earned before your disability began." Policy at UACL00072. Unum therefore claims that "for the period of your employment" means all monies earned between Stephan's date of hire and last day of work prior to his disability, and argues that any monies paid after the date of disability, including bonuses, need not be included in the monthly earnings calculation. Unum's interpretation of the policy terms is not facially suggestive of an abuse of discretion. Unum has not "construe[d] provisions of the plan in a way that conflicts with the plain language of the plan." *See Anderson*, 588 F.3d at 649. In light of the policy's ambiguity and the discretion given to Unum by the plan itself, it was not unreasonable for Unum to construe the policy as limiting the monthly earnings figure to income earned prior to the date of disability.

It is settled law that an ERISA plan must be interpreted in accordance with its plain meaning. Stephan argues that Unum's construction is unreasonable because the plan does not *exclude* bonuses from the monthly earnings calculation, as could have easily been done if that was intended. However, there exists no language within the policy here which, when taken together with the terms

5

1  of plaintiff's employment contract, mandates the inclusion of bonuses in the monthly earnings
2  calculation.  While "monthly earnings" as defined by the plan could encompass some types of
3  bonuses, the bonus described in plaintiff's employment contract is not of that type.  Even accepting
4  that there are competing interpretations, both of which may be reasonable, the plan's chosen
5  interpretation is not an abuse of discretion.

6        Stephan relies upon three cases, none of which is persuasive and two of which are
7  unpublished, one non-citable, and all non-precedential.  *See* Fed. R. App. P. 32.1; Ninth Circuit Rule
8  36-3(a)–(c); Civil L. R. 3-4.  Nonetheless, the court notes that even the unpublished cases do not aid
9  him.  For example, in *Hemenway v. Unum Life Ins. Co.*, 89 Fed. Appx. 630, 631 (9th. Cir. 2004), the
10 court held that "BME [Basic Monthly Earnings] includes the full proportion of any bonuses
11 attributable to the months worked prior to the date disability begins, regardless of when those
12 bonuses are actually received by the employee."  However, the plan there "unambiguously define[d]
13 the BME as 'the monthly rate of pre-tax compensation from the employer, *regardless of when*
14 *received*, in effect just prior to the date disability begins,' including any 'pre-tax compensation from
15 bonuses.'"  *Id.* (emphasis in original).  *Hemenway* therefore stands for the proposition that the plain
16 language of the plan will control.  It is therefore unpersuasive because the plain language of the
17 policy here is silent about the inclusion of bonuses in the calculation of monthly earnings.  *McAfee v.*
18 *MetLife*, No. 09-15085, 2010 WL 707383 (9th Cir. Mar. 1, 2010) is also unpersuasive for the same
19 reason.  There, MetLife abused its discretion by excluding pre-disability earnings, including
20 bonuses, where the "plain language of the plan stated that pre-disability earnings included
21 'commissions and/or performance bonuses averaged over the previous 12 months.'"  *Id.* at *2.
22 *Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2nd Cir. 2006) is simply inapposite.  In that de novo review
23 case, the court found that "there is sufficient evidence supporting each side's interpretation of
24 '[g]uaranteed' 'minimum compensation' to create a genuine issue of material fact, [and therefore]
25 the grant of summary judgment was inappropriate."  *Id.* at 579.

26       Finally, Stephan contends that Unum's logic would lead to absurd results if an employee
27 became disabled prior to receiving his first paycheck, or if an employee became disabled prior to
28

6

1  receiving his first quarterly commission payment.  The court expresses no opinion on these matters,
2  and limits its holding to the facts of this action.

II.       Monthly income

Stephan claims that even if the policy is limited to income earned prior to the date of disability, Unum abused its discretion by failing to include the bonus in the benefits calculation. Specifically, he claims his "guaranteed" bonus was earned monthly and that only its payment was deferred until the completion of one year.  Unum claims that under Stephan's employment contract, he could not earn his bonus until he satisfactorily completed his first twelve months of employment. Consequently, because Stephan had not completed his first twelve months prior to his disability, no part of his bonus was earned prior to the disabling cycling accident.

Stephan's employer, TWP, recorded the bonus amount in its accounting books as compensation expenses on a monthly basis.  Appeal at UACL01005.  However, the fact that TWP set monies aside for future payment of the bonus does not demonstrate monthly entitlement to the bonus amount.  TWP's actions could reasonably be interpreted as assuring the availability of sufficient funds should it find Stephan entitled to the bonus at the end of the year.  TWP's accounting procedures therefore neither necessarily evidence monthly accrual nor stand for the proposition that TWP had already determined that Stephan met the conditions precedent to the receipt of his bonus.

Since it is reasonable to find that TWP's accounting procedures regarding the bonus do not necessarily lead to accrual, the payment of the bonus—subsequent to the injury but prior to the end of the twelve month period—does not compel a different result.  The bonus was paid subsequent to Unum's initial findings, which supports a lack of abuse of discretion.  Moreover, it appears that TWP's payment of the bonus was gratuitous.  Stephan's employment contract states that he will "be guaranteed $300,000 bonus for your first 12 months of employment," provided his performance did not fall below the level expected by TWP, and he was not terminated.  *See* Offer Letter at UACL00366.  Because Stephan never completed his first twelve months of employment, TWP does

not appear to be under any legal obligation to pay the bonus amount. In any event, interpreting the bonus payment to be gratuitous was not an abuse of discretion. Indeed, the bonus payment itself is marked "Discr. Bonus" on Stephan's pay stub. Appeal at UACL01004. Further, there is some evidence that TWP may have acted out of a moral, rather than contractual, obligation: "Mark [counsel for TWP] responded they are going to behave in a moral way — this is the way they are behaving. They accelerated the bonus into December due to medical payments [plaintiff] was incurring. In general ee [sic] was is [sic] in a difficult situation." Debofsky Dec., Exh. H (Phone Call Notes) at UACL00648. Finally, although TWP lists "$500,000 ($200,000 base, $300,000 bonus)" as the earnings figure it used to compute Stephan's annual premium payments, *id.* Exh. C (Claim) at UACL00058, there is no evidence in the record that TWP actually paid disability insurance premiums with respect to Stephan's bonus amount. *Cf.* Appeal at UACL0086 (stating that Unum has "received or will soon receive" premium payments). Indeed, during oral argument counsel for Stephan agreed to accept a set-off corresponding to the unpaid premium amount.

Unum's conclusion that Stephan's bonus was a gratuitous payment, rather than income earned prior to the date of disability, is a reasonable interpretation of the facts. Unum's rationale does not "conflict[] with the plain language of the plan," *Anderson*, 588 F.3d at 649; instead it appears to be a based upon a reasonable interpretation of the plan's terms, *Sznewajs*, 572 F.3d at 735, and therefore must be upheld.

III.   Conflict of interest

Stephan contends that because Unum's conflict of interest is substantial, this court should give less deference to Unum's decision.

A conflict of interest can exist for ERISA purposes when an insurance company both evaluates claims as the plan administrator and is the funding source of applicable benefits under the plan. *Glenn*, 128 S. Ct. at 2349–50. This "conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Id.* at 2348 (internal quotations and emphasis omitted). Specifically, "[t]he conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision,

8

including, but not limited to, cases where an insurance company has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and promote accuracy, . . ." *Id.* at 2351 (citation omitted). The district court may view the decision of a conflicted administrator with a low level of skepticism "if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Abatie*, 458 F.3d at 968. On the other hand, a court may weigh a conflict more heavily "if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claimant's reliable evidence, or had repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Id.* at 968–69.

Stephan claims that Unum's conflict of interest is demonstrated by Unum's disregard for the interpretation championed by TWP—Stephan's employer and the plan's administrator—that the appropriate earnings figure is $500,000. Although "Thomas Weisel Partners LLC is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties[,]" "[b]enefits are administered by the insurer and provided in accordance with the insurance policy issued to the Plan." *See* Policy at UACL00099. Here, the plan vests Unum with discretion: "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." *Id.* at UACL00079. Although Stephan contends that Unum's decision to reject TWP's interpretation demonstrates self-dealing, the court finds it to be an acceptable exercise of discretion that leads to a reasonable result. *See Conkright*, 130 S. Ct. at 1651 ("[a]pplying a deferential standard of review . . . means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" (quoting *Firestone*, 489 U.S. at 111)). Unum's decision is therefore not an abuse of discretion.

Stephan's reliance on *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456 (7th Cir. 2001) is unpersuasive. The contention in *Hess* was that defendant Hartford's refusal to consider an employment contract was abuse of discretion. *Hess* did not "overrule[] [defendant's] monthly

9

1 earnings calculations that had ignored the employer's report of compensation," Docket No. 58
2 (Stephan Reply) at 8; instead, it held that the district court had rightly considered plaintiff's
3 employment contract upon review, 274 F.3d at 462–63.  There is no suggestion here that Unum did
4 not review Stephan's employment contract; indeed, it is the very document upon which Unum's
5 arguments rely.

6 Here, there is no doubt that a conflict of interest exists.  Unum not only evaluates the claims
7 as the plan administrator and is the funding source of benefits under the plan, but also has
8 discretionary authority to interpret the terms and provisions of the policy.  *See* Policy at
9 UACL00079.  There is also no dispute that Unum rejected TWP's interpretation regarding the
10 appropriate level of benefits.  Other than Unum's inherent conflict itself, there is little evidence of
11 "malice, self-dealing, or of a parsimonious claims-granting history." *Abatie*, 458 F.3d at 968.  Nor
12 has Stephan demonstrated "a history of biased claims administration." *Glenn*, 128 S. Ct. at 2351.
13 Rather, Unum has presented consistent arguments which take Stephan's arguments into
14 consideration.  *See* Debofsky Dec., Exh. F (Appellate Review Letter) at UACL00611 (addressing
15 Stephan's arguments).

16 In sum, although broad discretion has significant potential for abuse, Unum's conflict of
17 interest did not weigh heavily upon its decision-making process in this case and therefore does not
18 tip the scale towards a finding of an abuse of discretion.

20 CONCLUSION

21 For the foregoing reasons, defendant's motion for summary judgment is GRANTED and
22 plaintiff's motion for summary judgment is DENIED.  Defendant's motion to strike documents
23 outside the administrative record is DENIED as moot.

24 IT IS SO ORDERED.

Dated:  July 22, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

10